IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JON THACKER, | ) Civil Action No. |
| | ) |
| *Plaintiff*, | ) Filed Electronically |
| | ) |
| VS. | ) |
| | ) |
| MITRATECH HOLDINGS, INC. d/b/a ASSUREHIRE, and MANOR MANAGEMENT CORPORATION, | ) |
| | ) |
| | ) |
| *Defendants*. | ) |
| | ) |
| | ) |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Jon Thacker, by and through the undersigned counsel, files the following

## THE PARTIES

1.      Plaintiff, Jon Thacker ("Plaintiff"), is an adult individual who resides in Ironton, Ohio.

2.      Defendant, Mitratech Holdings, Inc. d/b/a AssureHire ("AssureHire"), is a foreign business corporation with a registered address of 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101 and a principal place of business of 13301 Galleria Circle, BLDG B, Suite 200, Bee Cave, Texas 78738.

3.      Defendant, Manor Management Corporation ("MMC"), is a Pennsylvania corporation with its principal place of business located at 1377C Spencer Ave, Lancaster, Pennsylvania 17603. MMC is a property management company that operates residential apartment complexes.

## JURISDICTION AND VENUE

**A.     This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1332.**

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) ("Diversity Jurisdiction") as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.     Plaintiff, Jon Thacker, is a citizen of the State of Ohio, as he is domiciled in Ironton, Ohio.

6.     Defendant AssureHire is a citizen of the States of Delaware and Texas. For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). AssureHire is incorporated under the laws of the State of Delaware and maintains its principal place of business at 13301 Galleria Circle, BLDG B, Suite 200, Bee Cave, Texas 78738. Accordingly, AssureHire is a citizen of Delaware and Texas for purposes of diversity jurisdiction.

7.     Defendant MMC is a citizen of the State of Pennsylvania. For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). MMC is incorporated under the laws of the Commonwealth of Pennsylvania and maintains its principal place of business at 1377C Spencer Ave, Lancaster, Pennsylvania 17603. Accordingly, MMC is a citizen of Pennsylvania for purposes of diversity jurisdiction.

8.     Complete diversity of citizenship exists between the parties as Plaintiff is a citizen of Ohio, AssureHire is a citizen of Delaware and Texas, and MMC is a citizen of Pennsylvania.

No plaintiff shares citizenship with any defendant, thereby satisfying the complete diversity requirement under 28 U.S.C. § 1332(a)(1).

9. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff seeks compensatory damages for lost wages in the amount of approximately $62,400 annually based on the rescinded job offer at $30 per hour for a 40-hour workweek with potential overtime. Plaintiff further seeks compensatory damages for emotional distress, mental anguish, humiliation, and embarrassment, as well as punitive damages against both Defendants for willful, wanton, or reckless conduct. The aggregate amount of these damages, calculated in good faith, exceeds $75,000, exclusive of interest and costs, thereby satisfying the jurisdictional amount requirement under 28 U.S.C. § 1332(a)(1).

**B.  The United States District Court for the Eastern District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

10. Venue is proper in the United States District Court for the Eastern District of Pennsylvania (hereinafter, the "Eastern District") as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

11. Specifically, MMC's Vice President of Property Maintenance, Mark Gebhard, who was directly involved in the interviewing, hiring, and offer rescission decisions, conducted business from Pennsylvania, specifically in Lancaster County. The final interview on February 15, 2025, during which Plaintiff was offered the position, was conducted via Zoom Conference with Mr. Gebhard and Executive Committee Chair Verna Stilwell, both of whom were acting on behalf of MMC from Pennsylvania. The background check report prepared by AssureHire was transmitted to and received by MMC in Pennsylvania, where MMC's decision-makers reviewed and relied upon it.

12. Further, the decision to rescind Plaintiff's job offer was made by MMC personnel operating within Pennsylvania, and communications regarding the rescission were transmitted from Pennsylvania. MMC's Human Resources Representative, Laurie Eshelman, who confirmed the rescission was based on Plaintiff's criminal background, conducted her communications from Pennsylvania.

13. Additionally, venue is proper under 28 U.S.C. § 1391(b)(1) as MMC is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction with respect to the civil action in question. MMC is a Pennsylvania corporation with its principal place of business in Pennsylvania (Lancaster County) and conducts continuous and systematic business operations within the Commonwealth. A substantial part of the property and conduct that is the subject of this action—namely, the background check report and the employment decision-making process—occurred in or involved Pennsylvania.

14. Under 28 U.S.C. § 1391(c)(2), for purposes of venue, a defendant corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Both AssureHire and MMC are subject to personal jurisdiction in Pennsylvania, as set forth below, and therefore reside in Pennsylvania for venue purposes.

C.  **This Court May Exercise Personal Jurisdiction Over Defendants.**

15. This Court may exercise personal jurisdiction over Defendant MMC pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court's exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.

16. Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction

pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

17. 42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a)(2).

18. As discussed above, Defendant MMC is incorporated under the laws of the Commonwealth of Pennsylvania and maintains its principal place of business in Pennsylvania. MMC operates residential apartment complexes and conducts continuous and systematic business operations within Pennsylvania. Accordingly, this Court may properly exercise general personal jurisdiction over Defendant MMC pursuant to 42 Pa. C.S. § 5301(a)(2)(i) and (iii).

19. Defendant AssureHire is registered for business in Pennsylvania and has therefore consented to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301(a)(2)(ii).

**FACTUAL BACKGROUND**

20. Plaintiff is a 44-year-old male with several years of experience in the construction industry. Most recently, Plaintiff worked as a superintendent for a Clearwater, Florida-based

5

construction company. In August 2024, Plaintiff relocated to Ironton, Ohio to care for his ailing mother.

21.     On January 28, 2025, Plaintiff discovered a job posting on Indeed.com for the position of Head of Property Maintenance at MMC's Country Club Apartment complex in Huntington, West Virginia (the "Position").

22.     The Position required 5 years of maintenance or construction experience, appropriate technical skills, a high school diploma, and the ability to support MMC as an advocate. Plaintiff met all requirements and submitted his application through Indeed.

23.     The Position offered compensation of $30 per hour for a 40-hour workweek with potential overtime, equating to approximately $62,400 annually.

24.     On February 7, 2025, Plaintiff spoke with MMC's Vice President of Property Maintenance, Mark Gebhard, who discussed the Position and Plaintiff's qualifications. Mr. Gebhard then connected Plaintiff with Property Manager Debby Rose, who conducted an initial interview and completed a hard copy application with Plaintiff.

25.     On February 12, 2025, Plaintiff attended a second interview with Ms. Rose, who informed him that MMC thought he was "a great fit for the Position."

26.     On February 15, 2025, Plaintiff participated in a virtual final interview via Zoom with Mr. Gebhard and Executive Committee Chair Verna Stilwell. At the conclusion of the interview, Plaintiff was offered the Position at the stated compensation, subject to a background investigation.

27.     Between February 15 and February 20, 2025, AssureHire prepared and provided a criminal history record information report (the "Report") to MMC.

28.     AssureHire mistakenly compiled the Report using information from "Jonathan N. Thacker" from Bluefield, West Virginia, who had a different date of birth and middle initial than Plaintiff.

29.     The erroneous Report included Case 19CR000159 associated with the other individual. AssureHire failed to verify middle names, addresses, dates of birth, and social security numbers before issuing the Report.

30.     On February 20, 2025, MMC emailed Plaintiff stating that it "may decide not to employ you based, in whole or in part, on information obtained from the background report."

31.     Upon receiving this notice, Plaintiff immediately contacted MMC and filed a dispute with AssureHire.

32.     Kathryn Reynolds, AssureHire's Applicant Dispute and Compliance Team Lead, responded to Plaintiff's dispute, stating: "I was able to verify with the court records available online that the identifiers do not match you for Case 19CR000159. I'll be able to remove that case from your report and resolve your dispute today."

33.     Plaintiff's only criminal history was a conviction over a decade ago in Ohio under R.C. §2925.03 (Trafficking/aggravated trafficking in drugs), for which he served a 5-year period of incarceration.

34.     This conviction was expunged by Lawrence County, Ohio courts in May 2024 pursuant to R.C. §2953.52. Plaintiff had no other criminal infractions.

35.     Plaintiff did not initially disclose this expunged conviction, as expunged records are legally sealed. He disclosed it only after receiving MMC's February 20, 2025 notice.

36. On February 25, 2025, Mr. Gebhard sent Plaintiff a text message stating: "we rescinded your offer. The team decided to pursue other candidates. I wish you well on your search for a job."

37. Following the rescission, MMC Human Resources Representative Laurie Eshelman told Plaintiff the offer was rescinded due to his "actual criminal background" and stated: "If you couldn't pass the background check to live here, you can't work here."

38. As a direct result of AssureHire's negligent acts and MMC's unlawful conduct, Plaintiff was not hired for the Position.

39. Plaintiff has suffered substantial economic damages in the form of lost wages of approximately $62,400 annually, as well as emotional distress, mental anguish, humiliation, and embarrassment.

## COUNT I
## NEGLIGENCE
### (AGAINST DEFENDANT MITRATECH, INC. d/b/a ASSUREHIRE)

40. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

41. To prevail on a claim for negligence under Pennsylvania law, the plaintiff must prove (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate or legal cause of the injury, and (4) the plaintiff suffered an actual loss or damage. *Grove v. Port Auth.*, 655 Pa. 535, 549, 218 A.3d 877, 886 (2019).

42. As a consumer reporting agency providing employment-related background checks, AssureHire owed a duty of reasonable care to Plaintiff in preparing the Report for MMC's consideration of Plaintiff's employment.

43. In *Sharpe v. St. Luke's Hosp.*, 573 Pa. 90, 821 A.2d 1215 (2003), the Pennsylvania Supreme Court held that entities producing employment-related tests or reports owe a duty to exercise reasonable care to those individuals who are the subjects of such reports. The Court held that "a sufficient relationship exists between the Hospital and Sharpe to justify the imposition of a duty upon the Hospital to exercise reasonable care in the collection and handling of the urine specimen, despite the absence of a contract between the two parties." *Id.* at 1219.

44. Similarly, AssureHire owed Plaintiff a duty to exercise reasonable care in preparing the Report, including accurately identifying the correct individual and verifying key identifying information such as middle names, addresses, dates of birth, and social security numbers.

45. AssureHire breached its duty to Plaintiff by compiling the Report using only the first and last name "Jonathan Thacker" without verifying the middle initial.

46. AssureHire further breached its duty by failing to verify that the date of birth matched Plaintiff.

47. AssureHire further breached its duty by failing to verify that the address matched Plaintiff.

48. AssureHire further breached its duty by failing to verify the social security number.

49. AssureHire further breached its duty by including Case 19CR000159 in the Report, which belonged to a different person, Jonathan N. Thacker from Bluefield, West Virginia.

50. These failures constitute material and factual inaccuracies that fell below the standard of reasonable care required of consumer reporting agencies conducting employment background investigations.

51. AssureHire's negligence was both the cause-in-fact and the proximate cause of Plaintiff's damages.

9

52. But for AssureHire's negligent misidentification of Plaintiff, MMC would not have issued the pre-adverse action notice on February 20, 2025.

53. AssureHire's error was the direct and proximate cause of MMC's decision to send the pre-adverse action notice, which set in motion the chain of events leading to the job offer rescission.

54. AssureHire's conduct was a substantial factor in bringing about Plaintiff's damages. See *Constantine v. Lenox Instrument Co.*, 2024 PA Super 216, 325 A.3d 725, 738 (holding that causation is established when the plaintiff's injuries would not have occurred "but for" the defendant's alleged conduct and the defendant's act was a substantial factor in bringing about the plaintiff's harm).

55. Prior to receiving the erroneous Report, Plaintiff had no intent or desire to disclose his expunged conviction to MMC. However, he reasonably felt compelled to address his conviction after receiving MMC's notice that it "may decide not to employ you based, in whole or in part, on information obtained from the background report."

56. AssureHire's negligence was not only a substantial factor, but the exclusive factor in bringing about the disclosure of Plaintiff's expunged conviction to MMC.

57. The harm suffered by Plaintiff—the loss of the job offer—was a foreseeable consequence of providing inaccurate criminal background information to a prospective employer.

58. As a direct and proximate result of AssureHire's negligence, Plaintiff has suffered substantial economic damages in the form of lost wages in the amount of approximately $62,400 annually.

59. Plaintiff has also suffered loss of employment opportunity and loss of future earning capacity as a result of AssureHire's negligence.

60. Plaintiff has suffered substantial emotional distress, mental anguish, humiliation, and embarrassment from being falsely associated with another person's criminal case and from losing the job opportunity.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Defendant AssureHire, and award the following relief: (i) compensatory damages for economic losses, including lost wages of approximately $62,400 annually, loss of employment opportunity, and loss of future earning capacity; (ii) compensatory damages for emotional distress, mental anguish, humiliation, and embarrassment; (iii) punitive damages against AssureHire for willful, wanton, or reckless conduct; (iv) reasonable attorneys' fees, expenses, and costs incurred in prosecuting this action; (v) pre-judgment and post-judgment interest as allowed by law; and (vi) such other and further relief as this Court deems just, equitable, and proper.

<u>**COUNT II**</u>
**VIOLATION OF THE PENNSYLVANIA CRIMINAL HISTORY RECORDS INFORMATION ACT, 18 PA. C.S.A. § 9101** *et seq.*
**(AGAINST DEFENDANT MANOR MANAGEMENT CORPORATION)**

61. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

62. Pennsylvania's Criminal History Records Information Act ("<u>CHRIA</u>"), 18 Pa. C.S.A. § 9101 *et seq.* governs the permissible use of criminal history record information in employment decisions. CHRIA is designed to balance employers' legitimate interests in reviewing criminal histories with protections for individuals with criminal records, particularly those who have obtained expungements.

63. Under CHRIA, an employer may consider "an applicant's felony or misdemeanor criminal conviction information only to the extent to which [the information] relate[s] to the

11

applicant's suitability for employment in the position for which he has applied." 18 Pa. C.S.A. § 9125(b).

64.     Additionally, CHRIA permits employers to consider criminal history information only if "voluntarily" provided by the applicant. See *McCorkle v. Schenker Logistics, Inc.*, No. 1:13-CV-3077, 2014 U.S. Dist. LEXIS 143187 (M.D. Pa. Oct. 8, 2014).

65.     Expunged convictions are legally sealed and treated as if they never occurred. Therefore, such convictions may not be considered in employment decisions, and individuals are not required to disclose them.

**A.     Plaintiff's Disclosure Was Not "Voluntary" Under CHRIA.**

66.     Black's Law Dictionary defines "voluntary" as "[u]nconstrained by interference; not impelled by outside influence." *First Commonwealth Bank v. St. Paul Mercury Ins. Co.*, Civil Action No. 14-19, 2014 U.S. Dist. LEXIS 141538, at *10 (W.D. Pa. Oct. 6, 2014) (quoting Black's Law Dictionary 1806 (10th ed. 2009)).

67.     Disclosure is "voluntary" only when it is made freely, without coercion, and without prompting by the employer.

68.     Plaintiff's disclosure of his expunged conviction was not voluntary because he was under no legal obligation to disclose an expunged conviction.

69.     Plaintiff made the disclosure only in response to MMC's February 20, 2025 notice stating that MMC "may decide not to employ you based, in whole or in part, on information obtained from the background report."

70.     The disclosure was made under duress and in an attempt to clarify the erroneous information regarding Case 19CR000159, which AssureHire had mistakenly attributed to Plaintiff.

71. Prior to receiving MMC's February 20, 2025 notice, Plaintiff had no intent or desire to disclose his expunged conviction to MMC.

72. Plaintiff's disclosure was "impelled by outside influence," specifically by MMC's own conduct in sending the pre-adverse action notice based on AssureHire's erroneous Report.

73. A truly voluntary disclosure would be one made proactively by the applicant without prompting. Plaintiff's disclosure was reactive and compelled by the circumstances created by the erroneous background check.

74. Therefore, Plaintiff's disclosure was not "voluntary" pursuant to CHRIA.

**B.      MMC Violated CHRIA by Considering Plaintiff's Expunged Conviction.**

75. MMC violated CHRIA by considering and relying upon Plaintiff's expunged Ohio conviction in its decision to rescind the job offer.

76. MMC's violation is established through Laurie Eshelman's statement that the offer was rescinded due to Plaintiff's "actual criminal background."

77. Ms. Eshelman further stated: "if you couldn't pass the background check to live here, you can't work here."

78. The clear inference is that MMC was referring to the expunged conviction, not the erroneous Case 19CR000159, which AssureHire had already confirmed was incorrect.

79. Further, even if the conviction were not expunged, a decade-old drug trafficking conviction bears no rational relationship to Plaintiff's suitability for a property maintenance position.

80. The duties of comparable positions include the management and training of maintenance personnel and performing repairs on buildings and property. See *McCorkle v. Schenker Logistics, Inc.*, No. 1:13-CV-3077, 2014 U.S. Dist. LEXIS 143187, at *13-14 (M.D. Pa.

13

Oct. 8, 2014) (when an employer denies employment to an applicant because he has been convicted of a misdemeanor or felony, the employer's consideration of the conviction is limited to the extent it relates to the applicant's suitability for the position).

81. Plaintiff's expunged conviction in no way affects his suitability to complete such tasks, and MMC cannot articulate otherwise.

82. MMC's consideration of the expunged conviction in violation of CHRIA was a direct and proximate cause of the job offer rescission and Plaintiff's resulting damages.

83. But for MMC's unlawful consideration of Plaintiff's expunged criminal history, Plaintiff would have been employed in the Position.

84. MMC's conduct was a substantial factor in bringing about Plaintiff's harm.

85. As a direct and proximate result of MMC's violation of CHRIA, Plaintiff has suffered substantial economic damages in the form of lost wages in the amount of approximately $62,400 annually.

86. Plaintiff has also suffered loss of employment opportunity and loss of future earning capacity as a result of MMC's violation of CHRIA.

87. Plaintiff has suffered substantial emotional distress, mental anguish, humiliation, and embarrassment from being denied employment based on an expunged conviction that MMC had no lawful basis to consider.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Defendant Manor Management Corporation, and award the following relief: (i) compensatory damages for economic losses, including lost wages of approximately $62,400 annually, loss of employment opportunity, and loss of future earning capacity; (ii) compensatory damages for emotional distress, mental anguish, humiliation, and

embarrassment; (iii) statutory penalties and civil damages as provided under CHRIA; (iv) punitive damages against MMC for willful, wanton, or reckless conduct; (v) reasonable attorneys' fees, expenses, and costs incurred in prosecuting this action; (vi) pre-judgment and post-judgment interest as allowed by law; and (vii) such other and further relief as this Court deems just, equitable, and proper.

## JURY DEMAND

88. Plaintiff demands a trial by jury on all matters so triable.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  February 12, 2026          By: */s/ Brendan K. Petrick*
                                  Brendan K. Petrick, Esq. (Pa. I.D. No. 88968)

                                  */s/ Patrick W. Carothers*
                                  Patrick W. Carothers, Esq. (Pa. I.D. No. 85721)

                                  The Workers' Rights Law Group, LLP
                                  Foster Plaza 10
                                  680 Andersen Drive, Suite 230
                                  Pittsburgh, PA 15220
                                  Telephone: 412.910.9592
                                  Facsimile: 412.910.7510
                                  brendan@workersrightslawgroup.com
                                  patrick@workersrightslawgroup.com

                                  *Counsel for Plaintiff, Jon Thacker*