UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JON THACKER,                               :
      Plaintiff,                        :
                                         :
      v.                                :   No.  5:26-cv-00929
                                         :
MANOR MANAGEMENT                           :
CORPORATION,                               :
      Defendant.                        :

_____

**O P I N I O N**

**Defendant Manor Management Corporation's Motion to Dismiss Plaintiff's Complaint
pursuant to Rule 12(b)(6), ECF No. 12 – Denied**

**Joseph F. Leeson, Jr.**                                           **July 20, 2026**
**United States District Judge**

I.      **INTRODUCTION**

This action arises from a dispute surrounding the prospective employment of the

Plaintiff, Jon Thacker, who has an expunged conviction. When his job offer was rescinded based

on his "criminal background," he initiated this suit. Thacker brings a negligence claim against

Mitratech Holdings, Inc. (d/b/a AssureHire), the company tasked with conducting his

background check for employment, and a claim for violation of the Pennsylvania Criminal

History Records Information Act ("CHRIA") against his prospective employer, Manor

Management Corporation (hereinafter "MMC"). As of the date of this Opinion, MMC is the only

remaining Defendant. MMC now moves to dismiss the CHRIA violation claim against it. For the

reasons below, the Court will deny the Motion to Dismiss.

II.      **BACKGROUND**

A.  **Factual Allegations**

Plaintiff Jon Thacker is 44 years old and has several years of construction experience

from working in Clearwater, Florida. Compl. ¶ 20., ECF No. 1. In August of 2024, Thacker

1

relocated to Ohio to care for his mother. *Id.* ¶ 20. On January 28, 2025, he applied for work in West Virginia with a country club apartment complex owned by MMC, a Pennsylvania corporation. *Id.* ¶¶ 3, 21. The position Thacker applied for was the Head of Property Maintenance, and it required five years of maintenance or construction experience, technical skills, a high school diploma, and the ability to "support MMC as an advocate." *Id.* ¶¶ 21-22. Thacker alleges that he meets these requirements. *Id.* ¶ 22.

On February 7, 2025, Thacker interviewed with Mark Gebhard, the Vice President of Property Maintenance for the MMC property. *Id.* ¶ 24. Gebhard then introduced Thacker to Debby Rose, the MMC Property Manager, who conducted the initial interview and completed the application with Thacker. *Id.* ¶ 24. On February 12, 2025, Thacker had a second interview with Ms. Rose, who stated he was "a great fit for the position." *Id.* ¶ 25. On February 15, 2025, Thacker had a final virtual interview with Gebhard and Executive Committee Chair Verna Stilwell. *Id.* ¶ 26. At the conclusion of this final interview, Thacker was offered the position subject to a background investigation. *Id.*

Between February 15 and February 20, 2025, AssureHire conducted a background search and prepared a criminal history record information report for MMC. *Id.* ¶ 27. However, AssureHire mistakenly used the wrong name and conducted a background check on "Jonathan N. Thacker" from West Virginia. *Id.* ¶ 28. The erroneous report falsely attributed to Plaintiff Jon Thacker a different middle name, address(es), date of birth, social security number, and a criminal conviction labeled as "Case No. 19CR000159," *id.* ¶ 29, later described as "a felony conviction related to aggravated drug possession," *see* Pl. Br. 2., ECF No. 17.

On February 20, 2025, MMC emailed Thacker, stating it "may decide not to employ you based, in whole or in part, on information obtained from the background report." Compl. ¶ 30.

Thacker promptly contacted MMC and filed a dispute with AssureHire. *Id.* ¶ 31. An employee from AssureHire responded, stating that Thacker was incorrectly associated with Case No. 19CR000159, and the error would be resolved that same day. *Id.* ¶ 32. Though this background report was erroneous, Thacker did have a conviction in Ohio from over a decade prior, for trafficking/aggravated trafficking in drugs under R.C. § 2925.03, which resulted in a five-year period of incarceration.[1] *Id.* ¶ 33. This conviction was Thacker's only offense, and was expunged in 2024 by a court in Lawrence County, Ohio. *Id.* ¶ 34.

Thacker did not initially disclose this offense as it was legally sealed, but disclosed it to MMC after receiving the February 20 email. *Id.* ¶ 35 (referencing communication from ¶ 30). On February 25, 2025, Gebhard sent Thacker a text, saying: "we rescinded your offer. The team decided to pursue other candidates. I wish you well on your search for a job." *Id.* ¶ 36. MMC Human Resources Representative Laurie Eshelman later told Thacker the recission was due to his "actual criminal background" and stated: "[i]f you couldn't pass the background check to live here, you can't work here." *Id.* ¶ 37. Thacker was not hired at MMC, and subsequently brought this action. *Id.* ¶ 38.

### B.  Procedural History

On February 12, 2026, Thacker filed his Complaint in this Court. *See* Compl., ECF No. 1. Count I of the Complaint is a negligence claim brought against Mitratech Holdings, Inc., *id.* ¶¶ 40-60, but this Count was dismissed with prejudice when Thacker voluntarily dismissed all claims against Mitratech Holdings, Inc. (d/b/a AssureHire) on April 29, 2026, *see* Notice of

---

[1] The Court notes that Thacker's actual expunged offense, trafficking/aggravated trafficking in drugs, is coincidentally similar to the conviction he was falsely associated with: "Case No. 19CR000159," which involved "a felony conviction related to aggravated drug possession." *See* Pl. Br. 2., ECF No. 17.

Voluntary Dismissal, ECF No. 15.[2] Count II of the Complaint is a CHRIA claim brought against MMC. Compl. ¶¶ 61-87. In it, Thacker argues two theories under CHRIA. First, Thacker asserts that his disclosure is protected by CHRIA because it was involuntary, *id.* ¶ 68 (subheading A). In support of this, Thacker contends that he "had no intent or desire to disclose his expunged conviction to MMC" prior to "receiving MMC's February 20, 2025 notice," *id.* ¶ 71, that his disclosure was "impelled by outside influence," *id.* ¶¶ 66, 72, and that it was made without legal obligation, "under duress," and with prompting, *id.* ¶¶ 68, 70, 73. Second, Thacker alleges, *arguendo,* that if disclosure is deemed voluntary, then the expunged conviction was improperly considered by MMC in making its hiring determination. *Id.* ¶ 75 (subheading B). In support of this, Thacker argues that his "decade-old drug trafficking conviction bears no rational relationship to [his] suitability for a property maintenance position." *Id.* ¶ 79.

On April 27, 2026, MMC filed a Motion to Dismiss Count II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Motion, ECF No. 12; Brief in Support ("Def. Br."), ECF No. 12-1. On May 11, 2026, Thacker filed a Response in Opposition to MMC's Motion to Dismiss, *see* Brief in Opposition ("Pl. Br."), ECF No. 17, and MMC replied to Thacker's response on May 18, 2026, *see* Reply, ECF No. 18. The matter is now fully briefed, and the Court is prepared to render a decision on the Motion to Dismiss.

## III.    LEGAL STANDARDS

### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) - Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.

---

[2]    Mitratech Holdings, Inc. (d/b/a/ AssureHire) was terminated as a defendant on April 29, 2026.

2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)). Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The defendant bears the burden of demonstrating that the plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744,

750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Pennsylvania Criminal History Record Information Act (CHRIA) 18 Pa. Cons. Stat. §§ 9101 - 9183

The Pennsylvania Criminal History Record Information Act ("CHRIA") provides protections and limitations for the consideration of criminal records and expunged convictions in the context of employment determinations. *See* 18 Pa. Cons. Stat. § 9101 *et seq.* CHRIA applies to persons "within this Commonwealth." *Id.* at § 9103. For job applicants with expunged offenses who seek employment with a Pennsylvania employer, that "individual may not be required or requested to disclose information about the individual's criminal history record that has been expunged or provided limited access." *Id.* at § 9122.5 (a)(1). "An individual required or requested to provide information in violation of this section may respond as if the offense did not occur." *Id.*

Generally speaking, "criminal . . . information that has been expunged . . . may not be used by any individual or noncriminal justice agency for employment . . . purposes." *Id.* at § 9122.5(a.1). However, CHRIA contains an exception, under which an employer may consider an applicant's criminal information without fear of liability: "An employer to whom an individual *voluntarily discloses* the individual's criminal history record information shall be immune from liability from any claim arising under section 9122.5(a.1) (relating to effects of expunged records and records subject to limited access)" if "related to the employer's otherwise *lawful use or consideration* of the criminal history record information in connection with any employment decision." *Id.* at § 9122.6(b) (incorporating section 9122.5(a.1)) (emphasis added). "Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding

6
072026

whether or not to hire the applicant," *id.* at § 9125(a), insofar as it "relate[s] to the applicant's suitability for employment in the position" applied to, *id.* at § 9125(b). Notice in writing is also required if the decision not to hire is based on the criminal history record information. *Id.* at § 9125(c).

## IV.    DISCUSSION

For Thacker's CHRIA violation claim to survive a motion to dismiss, he must show that MMC used his expunged criminal information to make an employment decision, 18 Pa. Cons. Stat. § 9122.5(a.1), and that MMC is not otherwise immune from liability under Section 9122.6(b). Here, the Complaint alleges that MMC's Human Resources Representative explicitly told Thacker that the offer was rescinded due to his "actual criminal background." Compl. ¶ 37. Thacker explains that his "only criminal history was a conviction over a decade ago in Ohio under R.C. § 2925.03 (Trafficking/aggravated trafficking in drugs)," *id.* ¶ 33, which was expunged in May 2024, *id.* ¶ 34. Thus, to the extent MMC considered Thacker's "actual criminal background" when deciding not to hire him, such consideration necessarily included his expunged offense. The Court finds that MMC undoubtedly "used" Thacker's expunged criminal information in its decision to revoke his offer of employment, as prohibited by 18 Pa. Cons. Stat. § 9122.5(a.1). Thacker has therefore alleged sufficient facts in support of his initial CHRIA claim, so the Court's inquiry shifts to whether MMC is otherwise immune from CHRIA liability under 18 Pa. Cons. Stat. § 9122.6(b).

For MMC to be immune from Thacker's Section 9122.5(a.1) suit, it must be shown (1) that Thacker *voluntarily disclosed* his expunged conviction to MMC, and (2) that MMC *lawfully used or considered* this information in its decision not to hire Thacker. *Id.* at § 9122.6(b) (emphasis added) (discussing "voluntary disclosure" immunity for employers from claims

"arising under section 9122.5(a.1)"). Thacker's CHRIA claim contends that the disclosure of his expunged offense was not voluntary, and that even if it was, MMC did not make lawful use of that information in its decision not to hire him. The Court explores these arguments in turn, below.

### A. Voluntary Disclosure

CHRIA states that "an individual may not be required or requested to disclose information about the individual's criminal history record that has been expunged," 18 Pa. Cons. Stat. § 9122.5(a)(1), but that an employer "shall be immune from liability for any claim arising under section 9122.5(a.1)" where the individual "voluntarily discloses" his own criminal history record information, *id.* at § 9122.6(b). CHRIA does not define "voluntary disclosure." *See id.* at § 9102 (Definitions). Section 9122.6(b) did not become effective until 2024, and so there are limited resources specifically addressing or interpreting voluntariness under CHRIA. Nevertheless, Courts within the Third Circuit have made fact-specific "voluntariness" determinations when they arise in CHRIA claims.

For instance, in *Doyduk v. Attorney General United States*, the Third Circuit considered whether an Immigration Judge (IJ), who denied a noncitizen's request for status adjustment, was barred under CHRIA from considering the noncitizen's expunged criminal charge as part of that determination. *See* 66 F.4th 132, 138-39 (3d Cir. 2023). The court found that, where the petitioner had a right to stay silent on his expunged charges or to "respond as if the offense did not occur," but chose not to take advantage of that right and instead "testif[ied] at length about the incident," that the IJ lawfully considered the petitioner's expunged charges as part of its

determination. *Id.* at 138 (citing 18 Pa. Cons. Stat. § 9122.5(a)(1)).[3] Similarly, in *Foxworth v. Pennsylvania State Police*, the Third Circuit found that an employer was "not prohibit[ed] . . . from considering criminal misbehavior [which was] disclosed on an application," because such expunged information is not discovered in a criminal history background check but instead voluntarily revealed by the applicant himself. 228 F. App'x 151, 155 (3d Cir. 2007).[4] These cases provide examples in which both verbal and written disclosures of expunged offenses were found to be "voluntary" under CHRIA.

Thacker admits that he "disclosed" his prior offense to MMC "after receiving MMC's February 20, 2025 notice." Compl. ¶ 35. Yet, he contends that such disclosure was involuntary because it was "impelled by outside influence," *id.* ¶¶ 66, 72 (referencing *First Commonwealth Bank v. St. Paul Mercury Ins. Co.*, No. 14-19, 2014 WL 4978383, at *4 (W.D. Pa. Oct. 6, 2014) (quoting Black's Law Dictionary 1806 (10th ed. 2009))), namely, "MMC's February 20, 2025 notice stating that MMC 'may decide not to employ you based, in whole or in part, on information obtained from the background report,'" *Id.* ¶ 69. Thacker further alleges that his disclosure was involuntary because "he was under no legal obligation to disclose an expunged

---

[3]     The Third Circuit in *Doyduk v. Attorney General United States* also found that, even if the petitioner had not voluntarily disclosed the facts of his expunged charges, CHRIA would not have prevented others from speaking on his record, so the IJ could have considered the police report and detective's testimony about the expunged offense as well. 66 F.4th 132, 138-39 (3d Cir. 2023).

[4]     The *Foxworth* court reasoned as follows:

> Foxworth's case was expunged from his file, but the PSP obtained its information from Foxworth himself on the application, not from its criminal history background check, which came up clean. The record indicates that a PSP trooper advised him to withdraw his application because of the prior "criminal misbehavior" he listed on the application, not because of any prior arrest from his file.

228 F. App'x 151, 155 (3d Cir. 2007) (finding that the applicant failed to establish a property right to employment with the Pennsylvania State Police (PSP) and thus had no basis for a procedural due process claim).

conviction," *id.* ¶ 68, because he "had no intent or desire to disclose his expunged conviction to MMC" prior to "receiving MMC's February 20, 2025 notice," *id.* ¶ 71, and because a "truly voluntary disclosure would be one made proactively by the applicant without prompting," *id.* ¶ 73. These arguments do not carry weight.

First, the voluntary disclosure exception to CHRIA is not limited to voluntary disclosures made pursuant to legal obligations. *See* 18 Pa. Cons. Stat. § 9122.6. The very notion that something is only voluntary if obligatory is illogical, as the two words are antonyms. *Obligatory*, https://www.merriam-webster.com/thesaurus/obligatory (last visited July 16, 2026) (listing "voluntary" as an antonym). Second, the fact that Thacker "had no intent or desire to disclose his expunged conviction to MMC" *prior to* "receiving MMC's February 20, 2025 notice," Compl. ¶ 71, is of no significance because his disclosure was made *after* receiving the notice, so this statement does not speak to the voluntariness of his disclosure *at the time it was made*. Lastly, Thacker's argument that his disclosure was involuntary because it was "impelled by" MMC's February 20, 2025 notice, *id.* ¶¶ 66, 72, and not "made proactively" or "without prompting," *id.* ¶ 73, is unconvincing. Even if the Court applies Black's Law Dictionary's definition of "voluntary," as Thacker contends it should, *see id.* ¶ 66 (defining "voluntary" as "[u]nconstrained by interference; not impelled by outside influence") (citing *First Commonwealth Bank*, 2014 WL 4978383, at *4 (quoting Black's Law Dictionary 1806 (10th ed. 2009))), the factual allegations in the Complaint are insufficient to show that Thacker was "constrained" by MMC's February notice, or "impelled" to disclose his expunged offense when CHRIA allowed him to act as if it never occurred. *See* 18 Pa. Cons. Stat. § 9122.5(a)(1).

MMC's notice stated that it "may decide not to employ [Thacker] based, in whole or in part, on information obtained from the background report." Compl. ¶ 30. Thacker states that he

"immediately contacted MMC and filed a dispute with AssureHire" upon receiving the notice, *id.* ¶ 31, and that AssureHire promptly informed him that it had sent another person's background report to MMC in error, *id.* ¶ 32. Thacker alleges that his disclosure to MMC "was made under duress and in an attempt to clarify the erroneous information regarding Case 19CR000159, which AssureHire had mistakenly attributed to [him]," *id.* ¶ 70, but does not explain why he would need to disclose his *own* expunged conviction (aggravated drug trafficking) in order to clarify that the conviction erroneously attributed to him (aggravated drug possession) was invalid. Thacker had a right to remain silent as to his expunged offense. *See* 18 Pa. Cons. Stat. § 9122.5(a)(1). To clarify the blunder, he needed only to inform MMC that the conviction in the background check was not his, and that he was working with AssureHire to resolve the mistake. Thacker opted, instead, to disclose his expunged offense anyway. This was a choice; there is no evidence that he was constrained in his ability to make a different one. Thacker's fear of losing the job offer is of no consequence—this does not amount to duress. *See Doyduk*, 66 F.4th at 138 (declining to consider whether the plaintiff felt pressured to testify about his expunged offense, in finding that IJ was entitled to consider such testimony under CHRIA); *Foxworth*, 228 F. App'x at 152-155 (declining to consider whether plaintiff was concerned about disqualification from the employment position to which he applied, in finding that employer was entitled to consider the expunged offense that he disclosed on his application). Thus, the Court finds that Thacker's disclosure of his expunged offense to MMC was voluntary.

**B.      Lawful Use or Consideration of Expunged Offense**

Thacker's voluntary disclosure of his expunged offense brings MMC one step closer to immunity from suit under CHRIA, but Thacker's claim will only be dismissed if it is related to MMC's "otherwise lawful use or consideration of the criminal history record information in

connection with [its] employment decision" not to hire Thacker. 18 Pa. Cons. Stat. § 9122.6(b).

Thacker contends that MMC's consideration of his expunged offense was unlawful because "a

decade-old drug trafficking conviction bears no rational relationship to [his] suitability for a

property maintenance position." Compl. ¶ 79. In making this argument, Thacker suggests that

Section 9122.6(b)'s "lawful use or consideration" clause implicitly incorporates the "suitability"

standard under Section 9125 of CHRIA, and that because his "expunged conviction in no way

affects his suitability to complete [the] tasks" required of a property maintenance position,

Compl. ¶¶ 63, 79-81, MMC's consideration of his expunged offense was unlawful. The Court

explores this argument, and the legality of MMC's use or consideration of Thacker's expunged

offense, below.

### 1. Section 9125 does not apply.

Section 9125 states that "[f]elony and misdemeanor convictions may be considered by

the employer only to the extent to which they relate to the applicant's suitability for employment

in the position for which he has applied." 18 Pa. Cons. Stat. § 9125(b). By contrast, Section

9122.6 does not mention the word "suitability" and does not incorporate Section 9125 by

reference. *See id.* at § 9122.6. Thus, before the Court can even undergo a suitability analysis, it

must first determine whether Section 9125 applies in this case. It does not.

Section 9125 begins by stating that "[w]henever an employer is in receipt of information

which is part of an employment applicant's criminal history record information file, it may use

that information for the purpose of deciding whether or not to hire the applicant, only in

accordance with this section." 18 Pa. Cons. Stat. § 9125(a). What it means for something to be

"part of" an employment applicant's criminal history record information file is a developing

topic. The Third Circuit has suggested that this includes any criminal history information that

might ordinarily be found in such a file; information of a certain type, *i.e.*, "criminal history facts collected and maintained by state agencies." *Phath v. Cent. Transp. LLC*, 165 F.4th 780, 783 (3d Cir. 2026). How the employer comes to be "in receipt of" such information matters not. *See id.* The information need not be found in the file itself, as part of a background check, to fall under the scope of Section 9125 and be lawfully considered by an employer. *See id.* As here, where the information is voluntarily disclosed by the applicant either verbally or in writing, an employer may consider it if it is of the type of information that would normally be found in the criminal history record information file.

Importantly, however, expunged convictions are *never* found in one's criminal history record information file. Therefore, they cannot constitute "part of" one's file. Courts in the Third Circuit have made this clear. *See Foxworth v. Pa. State Police*, 402 F. Supp. 2d 523, 545 n.21 (E.D. Pa. 2005) (Section 9125 "relates to *criminal history record information,* which Foxworth does not have precisely because his record was expunged") (italics in original), *aff'd*, 228 F. App'x 151 (3d Cir. 2007) (unpublished); *see also Croley v. Jewish Residential Servs., Inc.*, No. 2:23-cv-177, 2025 WL 1134874, at *3 (W.D. Pa. Apr. 17, 2025) ("expunged 'criminal history record information' is not 'criminal history record information' at all"), *reconsideration denied*, No. 2:23-cv-177, 2025 WL 1615772 (W.D. Pa. June 6, 2025). An expunged conviction is not "information" per se, but rather, the *absence* of information. *See Croley*, 2025 WL 1134874, at *3. It is neither found in the criminal history record information file, nor the type of information that would appear there, so it does not fall within the parameters of Section 9125. *See id.* (citing *Guzzo v. Allen Distrib.*, 479 F. Supp. 3d 91, 95 (M.D. Pa. 2020) ("Hence, § 9125 only concerns employers who receive information that is actually within the applicant's criminal history file. It thus . . . excludes . . . expunged convictions.")). Here, MMC was "in receipt" of information

about Thacker's expunged drug trafficking conviction, Compl. ¶¶ 33-35, but the law is clear that Section 9125 is not applicable to expunged convictions. Consequently, the Court declines to apply Section 9125 and declines to proceed with a suitability analysis under it.

### 2. "Lawful Use or Consideration" under Section 9122.6(b)

Absent a suitability analysis, the Court is now tasked with deciding whether it is at least plausible, given the allegations in the Complaint, that MMC's consideration of Thacker's expunged offense was unlawful. If the factual allegations plausibly support this contention, Count II of the Complaint will survive MMC's Motion to Dismiss. Unfortunately, the scope of Section 9122.6(b), and what constitutes "lawful use or consideration," remains unclear. Section 9122.6(b) went into effect in 2024, and there is little case law on its application.[5]

Even though Section 9125 does not apply to expunged offenses, thus rendering a suitability analysis unnecessary, there is something to be said about whether MMC's consideration of the expunged offense was related to Thacker's candidacy. As a statute, CHRIA provides very strong protection for the disclosure and consideration of expunged offenses, and it does not appear consistent with legislative intent to completely abandon all protections when there is a voluntary disclosure. *See* 18 Pa. Cons. Stat. § 9122.5; H.B. 1419, 202nd Gen. Assemb. 2017 Sess. (Pa. 2017). It follows that an employer should be limited in some respects as to how they can consider voluntarily disclosed expunged offenses in making employment decisions.

---

[5] The Court has been unable to find legal authority on the application and interpretation of the CHRIA employer immunity clause, Section 9122.6(b). The parties' pleadings have reflected similar results. *See, e.g.*, Pl. Br. 3, ECF No. 17 ("the undersigned is unaware of any caselaw on this 'employer immunity' clause of the CHRIA"); *id.* at 7 ("The undersigned is unaware of any Court in this jurisdiction having decided the issue of consideration of expunged convictions as part of an applicant's criminal history records information since the enactment of §9122.6(b)."); *see generally*, Def. Br., ECF No. 12-1; Reply, ECF No. 18.

Here, MMC told Thacker that his employment offer was rescinded due to his "actual criminal background" and that "if [Thacker] couldn't pass the background check to live here, [he] can't work here." Compl. ¶¶ 76-77. Yet, MMC does not explain how an expunged drug trafficking offense would restrict someone's ability to live in a particular state or jurisdiction. If MMC intended to convey that its country club apartment complex in West Virginia restricts access to those with a criminal background, and only admits residents with a clean record, it did not say so. Even then, it is unclear whether such consideration of Thacker's expunged offense constitutes "lawful use" because an expunged conviction is the legal equivalent to having no record at all (*i.e.*, a clean record), *see Croley*, 2025 WL 1134874, at *3, and because nothing in the record explains how one's qualification for residency at MMC properties directly impacts his qualification for employment there. These questions may be better answered at a later stage of litigation, *i.e.*, after discovery. At this stage, however, the Court is unable to conclude that MMC's use and consideration of Thacker's expunged offense was lawful within the meaning of the statute. Accordingly, the Court is unable to find that MMC is immune from liability on Thacker's Section 9122.5 claim. It declines to dismiss Count II on the basis of any such immunity.

## V.    CONCLUSION

The Court finds that Thacker has not failed to state a CHRIA violation claim and that MMC has not proven immune to suit under 18 Pa. Cons. Stat. § 9122.6. MMC's Motion to Dismiss Count II of the Complaint will be denied. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge